IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | |
|---|---|
| COREY HANNAH, | |
| Petitioner, | CIVIL NO.: WDQ-10-0974 |
| | CRIMINAL NO.: WDQ-09-0507 |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

MEMORANDUM OPINION

Pending is Corey Hannah's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. A hearing was held on November 17, 2010. For the following reasons, the motion will be denied.

I. Background

On August 31, 2001, Hannah's co-defendant drove Darrell Taylor to Hannah's home, where Hannah forced him into the garage at gunpoint. Govt's Opp'n, Ex. 2 at 7:23-24, 8:2-12. Hannah and his co-defendant duct taped Taylor and caused two pit bulls to "chew[] on his legs and buttocks." *Id.* at 8:13-16. When the victim fled, Hannah and his co-defendant shot at him; Taylor was wounded. *Id.* at 8:21-25. On November 4, 2003, Hannah pled guilty to second-degree assault in the Circuit Court for

Baltimore County and Judge John Turnbull sentenced him to a suspended five-year sentence. *Id.* at 10:4-7.

On December 30, 2006, armed gunmen robbed a Check-Point store in Baltimore and fled to Hannah's Baltimore residence. Sept. 23, 2009 Plea Agmt., Attach. A. Hannah allowed them to stay there while they divided the money and hid from police. *Id.* On January 9, 2007, Hannah robbed a First Mariner Bank. June 26, 2009 Plea Agmt. ¶ 2.

On May 14, 2009, Hannah was indicted for conspiracy to commit robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, three counts of Hobbs Act robbery, and three counts of possession of a firearm in furtherance thereof.[1] Case No. WDQ-09-0272, ECF No. 1. Hannah was represented by Michael Kaminkow, Esquire. Pl.'s Supp. Mot. to Vacate 2. On June 26, 2009, Hannah pled guilty to the January 9, 2007 robbery; at this guilty plea, the Court informed him of his right to appeal. He withdrew the plea when the Court rejected the parties' Rule 11(c)(1)(c) plea agreement. Case No. WDQ-09-0272, ECF No. 36.[2]

---

[1] The Grand Jury charged Hannah and others with conspiracy to rob a series of commercial establishments in the Baltimore area between September 2006 and January 2007. Case No. WDQ-09-0272, ECF No. 1.

[2] Under the agreement, the parties stipulated to a sentence of 90 months imprisonment. June 26, 2009 Plea Agmt. ¶ 11. Hannah's presentence report showed that he was a career offender with a guidelines range of 151 to 188 months imprisonment. On August 14, 2009, this Court rejected the agreement because the

On September 23, 2009, Hannah pled guilty to one count of accessory after the fact, in violation of 18 U.S.C. § 3, for his participation in the December 30, 2006 Check-Point robbery. ECF No. 3. In the plea agreement, Hannah waived his right to appeal "any sentence at or below 90 months." Sept. 23, 2009 Plea Agmt. ¶ 11. At this guilty plea, the Court informed Hannah of his right to appeal.

Hannah's prior convictions for assault with intent to murder and second-degree assault made him a career offender under U.S.S.G. § 4B1.1. Presentence Rep. ¶ 35. His total offense level 21 and criminal history category VI yielded a guidelines range of 77 to 96 months. ECF No. 10. On November 11, 2009, Hannah was sentenced to 96 months imprisonment. *Id*. At the sentencing hearing, the Court informed Hannah of his right to an appeal without cost. Sentencing Hr'g 5:18-21. Hannah said that he understood his appeal rights. *Id.* 5:22-23.

On April 19, 2010, Hannah filed his motion to vacate. ECF No. 13. Counsel was appointed on August 9, 2010. ECF No. 20. On October 29, 2010, Hannah filed a supplemental motion to vacate. ECF No. 22.

---

proposed penalty was inappropriate for the admitted offense. Hannah's May 14, 2009 indictment was dismissed on March 31, 2010. Case No. WDQ-09-0272, ECF No. 84.

II. Analysis

Hannah argues that he received ineffective assistance of counsel because Kaminkow (1) failed to object to his career offender classification, and (2) failed to appeal his sentence. Pl.'s Mot. to Vacate 7.

A. Ineffective Assistance of Counsel

The Sixth Amendment guarantees the effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 686 (1984). To prove ineffective assistance of counsel, Hannah must show that: (1) counsel's deficient performance (2) prejudiced his defense. *Id.* at 687. The burden of proving ineffective assistance of counsel is on Hannah. *United States v. Luck,* 611 F.3d 183, 186 (4th Cir. 2010).

Deficient performance requires Hannah to demonstrate that counsel made errors so serious that the "representation fell below an objective standard of reasonableness." *Id.* at 686, 689 (there is a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance"). Prejudice requires Hannah to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* at 694.

B.  Failure to Challenge Career Offender Status

Hannah argues that he is not a career offender because Maryland second-degree assault is not a "crime of violence," and Kaminkow was ineffective because he did not object to the classification and preserve the issue for appeal.  Pl.'s Supp. Mot. to Vacate 1.  He contends that under *Johnson v. United States*, 130 S. Ct. 1265 (2010), the modified categorical approach does not apply to Maryland assault convictions because no subsection of the Maryland assault statute is categorically violent. *Id.* 4.  The Government argues that Hannah's 2003 second-degree assault conviction is a crime of violence under the modified categorical approach.  Govt's Supp. Opp'n 1-2.

Under Section 4B1.1 of the United States Sentencing Guidelines, a career offender is a defendant with two prior convictions for "crime[s] of violence" or "controlled substance offense[s]."  U.S.S.G. § 4B1.1(a).[3]  A crime of violence is one that: "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2.

---

[3]  Hannah does not contest that his assault with intent to murder conviction is a "crime of violence."

To determine whether a prior conviction is a "crime of violence," under the "categorical approach," the court looks to: (1) the fact of conviction, and (2) the statutory definition of the offense. *Taylor v. United States,* 495 U.S. 575, 600-602 (1990); *United States v. Vann,* 620 F.3d 431, 434(4th Cir. 2010)("[T]*he elements* of the statute of conviction, *not the facts* supporting conviction, are evaluated.")(emphasis in original). If the statute requires the use or threat of violent force, the offense is a crime of violence. *Taylor,* 495 U.S. at 599.

When the statute defining the prior crime is ambiguous— i.e., it includes nonviolent offenses—the court may "look beyond the definition of the crime to examine the [underlying] facts." *United States v. Kirksey,* 138 F.3d 120, 124 (4th Cir. 2004). *Johnson* reaffirmed this "modified categorical approach." 130 S. Ct. at 1273.[4]

---

[4] *Johnson* considered whether the defendant's Florida battery conviction was a violent felony under the Armed Career Criminal Act. 130 S. Ct. at 1268. In Florida, battery could be committed by: (1) "[a]ctually and intentionally touch[ing] or strik[ing] another person against [his] will," or (2) "intentionally caus[ing] bodily harm to another person." *Id.* at 1269. Actual and intentional touching could be "satisfied by *any* intentional physical contact, no matter how slight." *Id.* at 1269-70 (internal quotation marks omitted). Because there was "nothing in the record of [the defendant's] battery conviction permitt[ing] the District Court to conclude that it rested upon anything more than [slight contact]," the battery was not a violent felony. *Id.* at 1269. A mere intentional touching was insufficient "physical force" to classify Florida

6

In Maryland, second-degree is defined as "the offenses of assault, battery, and assault and battery, which retain their judicially determined meanings." Md. Code Ann., Crim. Law § 3-203. The statute does not define the elements of assault; Maryland case law articulates them. *Kirksey,* 138 F.3d at 125 ("Maryland recognizes common law crimes.").

The Fourth Circuit has determined that Maryland assault encompasses violent crimes. *Id.* The modified categorical approach permits "a court to determine . . . the basis for the conviction." *Johnson*, 130 S.Ct. at 1273. The Fourth Circuit has made clear that the modified approach applies to Maryland assault and battery convictions, and *Johnson* does not alter this.[5]

---

battery as a categorically violent offense; "in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." *Id.* at 1271.

[5] In *Johnson*, the Supreme Court cited *United States v. Simms,* 441 F.3d 313 (4th Cir. 2006) as an example of the modified categorical approach properly applied. *Id.* In *Simms,* the Fourth Circuit reasoned that:

> A Maryland conviction for battery . . . may be committed in several ways—some of which require the use, attempted use, or threatened use of physical force and some of which do not . . . Accordingly, we are unable to conclude that a Maryland conviction for battery is per se a violent felony . . . [B]ecause at least one of the ways in which a Maryland battery can be committed involves the use . . . of force against another, the district court properly looked beyond the fact of conviction and the elements of the offense to

7

Using the modified categorical approach, this Court may consider the charging documents, plea colloquy transcripts, or written plea agreements, to determine if Hannah's convictions were for "crimes of violence." *See Shepard v. United States,* 544 U.S. 13, 15 (2005).

During the plea hearing for Hannah's 2003 assault, he stipulated that he had "produced a handgun and pointed it at the victim . . . duct taped [the victim]" and allowed two pit bulls to "chew[] on his legs and buttocks." Govt's Opp'n, Ex. 2 at 6:6-16. When the victim fled, Hannah and his co-defendant "began firing [at] him." *Id.* at 6:22-24. Hannah concedes that this evidence shows his assault is a crime of violence under the modified approach.

The 2003 conviction is a "crime of violence;"[6] with his assault with intent to murder conviction, Hannah is a "career

---

  determine whether the particular offense of which
  Simms was convicted was a violent felony.

441 F.3d at 316.

Since *Johnson,* the Fourth Circuit has affirmed application of the modified approach to Maryland's assault statute. *See United States v. Brown,* 2010 WL 3623565, at *1 (4th Cir. Sept. 17, 2010)("A conviction for second degree assault in Maryland is not per se a violent felony . . . Thus, we must use a modified categorical approach.").

[6] *See United States v. Holland*, 59 F. Supp. 2d 492, 541 (D. Md. 1998)(Maryland assault conviction was a "crime of violence" when facts "included threatened physical violence and use of a gun").

offender," and Kaminkow's failure to object to that classification was not unreasonable. *See United States v. Moss,* 2008 WL 2717860 (D.S.C. Jul. 10, 2008)(counsel not ineffective in failing to object to career offender status when predicate offenses were clearly crimes of violence).[7]

C. Failure to Appeal

An attorney renders ineffective assistance of counsel if he fails to follow his client's instruction to file a timely notice of appeal. *United States v. Poindexter,* 492 F.3d 263, 273 (4th Cir. 2007). The remedy for counsel's failure to file a requested appeal is vacatur and reentry of the court's judgment, permitting the defendant to file a timely appeal. *United States v. Peak,* 992 F.2d 39, 42 (4th Cir. 1993).

In his motion, Hannah stated that he "wanted to appeal the sentence because the Court imposed a sentence beyond that envisioned [in] the written plea agreement" and because he "disagreed with the Court's application of [the] [c]areer [o]ffender provisions." Pl.'s Mot. to Vacate 8. He contends that he "clearly expressed desire to appeal." *Id.* At the § 2255 hearing, Hannah testified that after sentencing he told

---

[7] Kaminkow was also not ineffective because he did not attempt to convince the Fourth Circuit that it had misapplied Supreme Court precedent.

9

Kaminkow he wanted to appeal his sentence. Kaminkow testified that Hannah did not request an appeal orally or in writing.[8]

The Court will resolve the credibility contest in Kaminkow's favor, and find that Hannah did not request an appeal. Thus, the claim of ineffective assistance of counsel based on Kaminkow's failure to file an appeal must fail.[9]

D. Certificate of Appealability

A certificate of appealability ("COA") must issue before a petitioner may appeal the court's decision in a 28 U.S.C. § 2255 case. *See* 28 U.S.C. §(c)(1). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003)(internal quotations omitted).

---

[8] Kaminkow testified that no notes in Hannah's case file indicated that he asked for an appeal, and that for 40 years his practice has been to note a client's request for appeal in the upper right corner of his case file; Kaminkow produced Hannah's case file at the hearing, and the parties stipulated that it contained no request.

[9] Hannah was fully advised of his right to appeal by the Court. Sentencing Hr'g 5:18-21.

Because Hannah has not made a substantial showing of the denial of his constitutional rights, the Court will not issue a COA.

III. Conclusion

For the reasons stated above, Hannah's motion will be denied.

December 8, 2010            _____/s/_____
Date                        William D. Quarles, Jr.
                                United States District Judge